[Doc. No. 21]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>     v.<br><br>TORCHIO BROTHERS, INC., GREGORY V. TORCHIO, VINCENT A. TORCHIO, DONALD T. BALDI, ANTHONY S. ANTONELLI AND DOREEN RIORDAN SARAMA,<br><br>             Defendants. | Civil No. 07-2330 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

    This matter comes before the Court on Plaintiff's motion for summary judgment.  Plaintiff XL Specialty Insurance Company ("XL") seeks a judgment in favor of XL and against Defendants Torchio Brothers, Inc. ("Torchio"), Gregory V. Torchio and Vincent A. Torchio ("Defendants") for contractual indemnification in the amount of $572,898.28.

    On May 17, 2007, XL filed the within Complaint seeking contractual indemnification for losses sustained in connection with XL's issuance of surety bonds to Torchio.  As set forth in their moving papers, on or about February 17, 2004, Torchio, Gregory V. Torchio, Vincent A. Torchio, Donald T. Baldi, Anthony

1

S. Antonelli and Doreen Riordan Sarama (collectively, the "Indemnitors") executed and delivered a General Agreement of Indemnity (the "Indemnity Agreement") in favor of XL, as indemnitee, in order to induce XL, as surety, to issue bonds on behalf of Torchio, as principal.  (See Bieda Decl., Ex. A (attached to Pl. Motion)).

Pursuant to Article V of the Indemnity Agreement, the Indemnitors agreed that:

> [The Indemnitors] shall exonerate, hold harmless, indemnify, and keep indemnified [XL] from and against any and all losses, liabilities, damages, demands for payment or performance, expenses and costs of whatsoever kind or nature including, but not limited to, interest, court costs, document reproduction and storage charges, investigative expenses and costs, adjusting, expert and attorney fees imposed upon, sustained or incurred by [XL] by reason of (1) [XL] having executed, provided or procured BOND(S) in behalf of [Torchio]; (2) [the Indemnitors'] failure to perform or comply with any of the provisions of this AGREEMENT; (3) [XL] enforcing any of the covenants or conditions of this AGREEMENT; (4) [XL] conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any BOND(S); and/or (5) [XL] prosecuting or defending any action or claim in connection with any BOND(S) executed, provided or procured in behalf of [Torchio], whether [XL] at its sole option elects to employ its own counsel, or permits or requires [the Indemnitors] to make arrangements for [XL's] legal representation.

(See Bieda Decl., Ex. A).

Additionally, pursuant to Article XI of the Indemnity Agreement, the Indemnitors further agreed that "[i]n order to secure [the Indemnitors'] obligations to [XL] under this

2

AGREEMENT and any other indebtedness and liabilities of the [Indemnitors] to [XL], whether heretofore or hereafter incurred," the Indemnitors agreed to assign to XL "all right, title interest and estate of [the Indemnitors] in and to all property" including, but not limited to, contract balances, machinery, money, securities, deposits and negotiable instruments.  (See Bieda Decl., Ex. A).

As further set forth in the moving papers, after the execution of the Indemnity Agreement, Torchio obtained certain performance and payment bonds (the "Bonds") from XL in connection with a certain construction contract entered into by Torchio (the "Bonded Contract").  (See Bieda Decl., Ex. B).  As a result of issuing the Bonds, XL was required to satisfy debts owed by Torchio to certain of its subcontractors and material suppliers on the Bonded Contracts and to incur attorneys' fees and costs in a total amount of $572,898.28.  (See Bieda Decl., Ex. C).

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  Fed. R. Civ. P. 56(c).  In deciding whether there is a

---

[1] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inferences to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[2]  Anderson, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

The clear and unambiguous language of the Indemnity Agreement contractually obligates the Indemnitors to indemnify XL from losses, costs and expenses incurred in connection with the Bonds.  Under New Jersey law, "[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and [courts] must enforce those terms as written." Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987); see also County of Morris v. Fauver, 153 N.J. 80, 103 (1998)

---

[2] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

4

(holding that "where the terms of a contract are clear ... the court must enforce it as written") (citations omitted).  Thus, this Court must enforce the clear and unambiguous terms of the Indemnity Agreement.

Plaintiffs have submitted evidence in the form of a Declaration of Donald M. Bieda, a Surety Claim Manager for XL, which demonstrates that XL incurred losses in connection with XL's issuance of surety bonds to Torchio in a total amount of $572,898.28.  (See Bieda Decl., Ex. C).  Accordingly, pursuant to the terms of the Indemnity Agreement, XL is entitled to indemnification in the amount of $572,898.28.

Defendants have not opposed the motion for summary judgment.  Thus, as the record stands before the Court, there is no genuine issue of material fact and summary judgment is appropriate.

Accordingly, for the foregoing reasons, the Plaintiff's motion will be granted.  An appropriate Order will issue this date.

Dated:  July 23, 2008                     s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          United States District Judge